# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **J & J Sports Productions, Inc.,** | |
|       **Plaintiff,** | 2:16-cv-01217 JWS |
|       vs. | **ORDER AND OPINION** |
| **David Hoon Jung**, *et al.*, | [Re: Motions at Dockets 31, 32 & 38] |
|       **Defendants.** | |

## I. MOTIONS PRESENTED

At docket 31 plaintiff J & J Sports Productions, Inc. ("J&J") moves for summary judgment against defendant David Hoon Jung ("Jung") pursuant to Federal Rule of Civil Procedure 56. The motion is supported by a brief at docket 31-1; a separate statement of facts at docket 31-2; a declaration of counsel at docket 31-3; the affidavit of J&J's president, Joseph M. Gagliardi, at docket 19; the affidavit of Amanda Hidalgo at docket 18-4; and the affidavit of Florencio Mendez at docket 18-5. Jung opposes and cross-moves for summary judgment at docket 32. He supports this filing with a controverting statement of facts and separate statement of facts at docket 33. J&J replies at docket 34 and responds to Jung's separate statement of facts at docket 34-1. Jung replies at docket 35. J&J was granted leave to file a sur-response at docket 39, which J&J filed at docket 40.

-1-

Finally, at docket 38 Jung moves to retroactively extend the dispositive motion deadline. J&J opposes at docket 41. Oral argument was requested but would not assist the court's resolution of the motions.

## II. BACKGROUND

J&J is a commercial distributor and licensor of sporting events. It was granted the "exclusive nationwide commercial distribution (closed-circuit) rights to *'The Fight of the Century' Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program*," ["the Program"] telecast nationwide on Saturday, May 2, 2015."[1] J&J's investigators assert that they attended a pirated showing of the Program at DJ's Wings & Pizza ("DJ's Wings"), a restaurant owned by defendant DJ's Wings and Pizza, LLC ("DJ's LLC"). J&J's complaint alleges that Jung is a managing member of DJ's LLC who "had the obligation to supervise the activities of [DJ's Wings], which included the unlawful interception of [J&J's] Program."[2]

J&J alleges two causes of action against the defendants under the Federal Communications Act of 1934 as amended: (1) a violation of 47 U.S.C. § 605 (which covers the interception of satellite television signals[3]); and (2) a violation of 47 U.S.C. § 553 (which covers the interception of cable communications). The court entered a $50,000 default judgment against DJ's LLC at docket 21.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the

---

[1] Complaint. Doc. 1 at 6.

[2] *Id.* at 4.

[3] *DirecTV, Inc. v. Web*b, 545 F.3d 837, 844 (9th Cir. 2008) ("[T]he 'communications' protected by § 605(a) include satellite television signals.").

[4] Fed. R. Civ. P. 56(a).

suit under the governing law will properly preclude the entry of summary judgment."[5] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] However, summary judgment is mandated under Rule 56 "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[8] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[9] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[10] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[11] However, the non-moving party may not rest upon mere allegations or denials, but must

---

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6]*Id.*

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Rule 56(c), which states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

[8]*Id.* at 323.

[9]*Id.* at 323-25.

[10]*Anderson,* 477 U.S. at 248-49.

[11]*Id.* at 255.

show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[12]

### IV. DISCUSSION

**A.  Jung's Motion to Extend the Dispositive Motion Deadline**

Jung filed his cross-motion for summary judgment on April 28, 2017, 27 days after the April 1, 2017 deadline set out in the court's scheduling and planning order for filing such motions.[13] Jung's cross-motion is subject to dismissal if his motion to modify the scheduling order is denied.[14] Thus, the court will turn to his latter motion first, which is governed by Rule 16(b).

Rule 16(b)(4) states that a "schedule may be modified only for good cause and with the judge's consent."[15] This "good cause" standard "primarily considers the diligence of the party seeking the amendment."[16] "Courts within this Circuit 'have articulated and undertaken [a] three-step inquiry in resolving the question of "diligence" in the context of determining good cause under Rule 16[.]'"[17] Under that inquiry the movant may be required to show (1) that "he was diligent in assisting the court in creating a workable Rule 16 order;" (2) that "his noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding his diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated

---

[12]*Id.* at 248-49.

[13]Doc. 22 at 7.

[14]*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 n.7 (9th Cir. 1992) ("Had the scheduling order simply barred further motions after the cut-off date, the district court could have denied any late-filed motion solely on that ground, absent a request to modify the order.").

[15]Fed. R. Civ. P. 16(b)(4).

[16]*Johnson*, 975 F.2d at 609.

[17]*Morgal v. Maricopa Cnty. Bd. of Sup'rs*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (quoting *Grant v. United States*, No. 2:11-CV-00360 LKK, No. 2011 WL 5554878, at *4 (E.D. Cal. Nov. 15, 2011)).

at the time of the Rule 16 scheduling conference;" and (3) that "he was diligent in seeking amendment of the Rule 16 order, once it became apparent that he could not comply with the order."[18] "While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification . . . [i]f that party was not diligent, the inquiry should end.'"[19] District courts are "given broad discretion in supervising the pretrial phase of litigation, and [their] decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion."[20]

Jung's motion makes no attempt to establish any of the three diligence factors. Of particular importance, Jung does not claim that he failed to timely file his cross-motion due to "the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference."[21] Jung provides no explanation whatsoever for his untimely filing. Under the circumstances, the court cannot say that Jung made diligent efforts to comply with the court's scheduling and planning order. Jung's motion for leave to amend the scheduling order and, accordingly, his cross-motion for summary judgement, are denied.[22]

---

[18]*Id.*

[19]*In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson*, 975 F.2d at 609).

[20]*Johnson*, 975 F.2d at 607 (omission in original) (internal quotation marks omitted).

[21]*Morgal*, 284 F.R.D. at 460.

[22]Further, even if Jung had timely filed his summary judgment motion it would be denied because, as discussed below, J&J's evidence establishes questions of material fact that preclude the entry of summary judgment in Jung's favor.

**B.     J&J's Evidence Does Not Establish a Violation of Either Statute**

Section 605 prohibits the unauthorized interception of satellite communications,[23] whereas § 553 prohibits the unauthorized interception of cable service communications.[24] J&J's complaint does not specify whether defendants intercepted a satellite or cable service communication. And even though J&J now seeks summary judgment on both claims, it provides the court with no evidence showing the type of communication that was intercepted.

Despite this deficiency, J&J argues that it should be awarded summary judgment on both claims because it does not matter whether defendants intercepted a satellite or cable service communication.[25] All that matters, J&J asserts, is that an unspecified "interception, receipt, or publication occurred."[26] J&J relies on *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, where the Ninth Circuit reversed the district court's judgment in favor of a sports bar and remanded the case for entry of judgment in favor of the plaintiff despite the fact that neither side "raised any question about" whether § 553 or § 605 applied.[27] *Kingvision* is not on point, however, because, here, Jung does raise the issue.[28]

Alternatively, J&J argues that the court should hold that defendants violated § 605 because the "signal originated as an encrypted, closed-circuit satellite signal."[29] This

---

[23] 47 U.S.C. § 605(a) ("No person not being authorized by the sender shall intercept any radio communication . . . .").

[24] 47 U.S.C. § 553(a)(1) ("No person shall intercept . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.").

[25] Doc. 31-1 at 4.

[26] *Id.*

[27] 168 F.3d 347, 349 n.1 (9th Cir. 1999).

[28] Doc. 32 at 7.

[29] Doc. 31-1 at 5.

argument relies on a minority view, adopted by the Second Circuit, that the interception of a cable system communication is covered by both § 553 and § 605 so long as the programming originated as a satellite signal.[30] The court declines to follow this view, however, and will instead follow the persuasive decisions of each of the four Circuit Courts that have subsequently considered the issue.[31] According to this majority view, "[a] signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception."[32]

Finally, J&J essentially argues that the court should excuse its inability to come forth with evidence that defendants violated either statute because "obtaining direct evidence of signal interception is difficult."[33] J&J relies on *DirecTV, Inc. v. Webb*, where the Ninth Circuit upheld the district court's finding that the defendant committed signal piracy based solely on circumstantial evidence.[34] Specifically, the defendant proffered no legitimate reason for why he purchased "piracy access devices," and his girlfriend had called his satellite company to complain about a system malfunction after the company deployed a pirating countermeasure. In holding that circumstantial evidence like this may be sufficient, the Ninth Circuit noted that "[s]ignal piracy is by its nature a

---

[30]*Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996).

[31]*United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996) (§ 605 only applies "to the unlawful interception of cable programming transmitted through the air"); *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001) ("Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605."); *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 177 (1st Cir. 2006) (same); *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 352 (5th Cir. 2014) (same).

[32]*J & J Sports Prods., Inc. v. Manzano*, No. C-08-01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008).

[33]Doc. 31-1 at 5.

[34]545 F.3d at 844.

surreptitious venture and direct evidence of actual interception may understandably be hard to come by."[35]

*Webb* is of no help to J&J here. In *Webb*, the plaintiff possessed evidence of the means used to intercept the signal but no direct evidence of the interception. Here, the opposite is true. The evidence shows that the Program was intercepted and shown at DJ's Wings, and the missing evidence goes to whether a cable or satellite system communication was intercepted. J&J can hardly complain that obtaining this evidence is difficult; on the record before the court it is not apparent that J&J has conducted any discovery. J&J's summary judgment motion will be denied.

## C. Additional Questions of Material Fact Preclude Summary Judgment

Even if J&J's had come forth with evidence establishing a violation of either § 553 or § 605, its evidence does not establish Jung's individual liability. "[T]o establish vicarious liability of an individual shareholder for a violation of § 553 or § 605, [the plaintiff] must show that: (1) the individual had a right and ability to supervise the infringing activities and (2) had an obvious and direct financial interest in those activities."[36]

> To satisfy the "right and ability to supervise" prong, a plaintiff must allege more than the shareholder's mere right and ability to supervise the corporation's conduct generally. The plaintiff must allege that the defendant had supervisory power over the infringing conduct itself. Furthermore, to satisfy the "direct financial interest prong," a plaintiff cannot merely allege that the shareholders profit in some way from the profits of the corporation. Simply put, an individual's status as a shareholder or officer is insufficient to show that he or she had the

---

[35]*Id.*

[36]*J & J Sports Prods., Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *3 (N.D. Cal. March 14, 2011). *See also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) ("[Vicarious infringement's roots lie in the agency principles of respondeat superior. . . . 'One . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.'") (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

requisite supervision authority or financial interest to warrant individual liability.[37]

To support its vicarious liability claim, J&J presents various documents from the Arizona Corporation Commission's website showing that Jung was the sole shareholder of DJ's LLC on the night in question, as well as the owner listed on paperwork filed with the Arizona Department of Liquor Licenses and Control.[38] These documents make a prima facie showing that Jung had the requisite ability to supervise and a direct financial interest in the pirated Program, but Jung's evidence in response raises questions of material fact that preclude summary judgment.

According to Jung's declaration, Jung sold his ownership and managerial interest in DJ's LLC well before the Program was shown. He states that as of January 6, 2015, he ceased to own DJ's LLC or receive "any income or benefit" from it.[39] J&J counters that this declaration is insufficient to raise a genuine issue because it is self-serving and J&J's documentary evidence refutes Jung's claims. These arguments are unpersuasive. Because Jung's declaration includes statements of specific facts and he presents sales documents supporting those statements, the court cannot disregard his declaration as self-serving.[40] Further, even though J&J's documentary evidence shows that Jung was the owner of DJ's LLC on the night in question, a reasonable jury could return a verdict for Jung based on his evidence showing that he actually relinquished any financial

---

[37]*Walia*, 2011 WL 902245, at *3 (citations omitted).

[38]Doc. 31-3.

[39]Doc. 33 at 10.

[40]*See S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) ("In most cases . . . [t]hat an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact. Only in certain instances—such as when a declaration state[s] only conclusions, and not such facts as would be admissible in evidence—-can a court disregard a self-serving declaration for purposes of summary judgment.") (citations and internal quotation marks omitted).

interest in the company four months prior.  Disputed questions of material fact preclude the entry of summary judgment in J&J's favor.

## V.  CONCLUSION

Based on the preceding discussion, the motions at dockets 31, 32, and 38 are DENIED.

DATED this 2nd day of August 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT